*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY ANN LAMKIN and STEVE LAMKIN,

Plaintiffs-Appellants,

v

EUGENE HARTMEIER, CYNTHIA HARTMEIER,
KEVIN HARTMEIER, DENNIS MCCOMB,
GLORIA MCCOMB, DANIEL ENGRAM,
DANIELLE ENGRAM, JAMES BEAUDOIN,
CECILE LAUDENSLAGER, ANGELA CHRISTIE,
KIMBERLY KRASKA, JOAN BEAUDOIN,
AARON KIRBY, DAMON HARTMEIER, DENISE
ENGRAM, DEANN ENGRAM, DEREK
ENGRAM, CATHERINE BARRETT,

Defendants-Appellees,

and

RONALD THYBAULT and the Estate of MARY
WECKESER,

Defendants.

UNPUBLISHED
February 8, 2024

No. 326986
Livingston Circuit Court
LC No. 12-026600-NZ

Before: MARKEY, P.J., and K. F. KELLY, and GADOLA JJ.

ON REMAND, AFTER REMAND

PER CURIAM.

This case returns to this Court after a second remand to the trial court. We conclude that the trial court correctly assessed the record before it and correctly applied the relevant authority, including our Supreme Court's decision in *Marlette Auto Wash, LLC v Van Dyke SC Properties, LLC*, 501 Mich 192; 912 NW2d 161 (2018). We therefore affirm.

-1-

I. FACTS

This case involves a dispute over the use of Island Shore Drive, a private dirt road along the northern shore of Oneida Lake in Pinckney, Michigan. Island Shore Drive crosses the property of plaintiffs, Mary Ann and Steve Lamkin, and provides ingress and egress to M-36 for multiple lots on the northern side of the lake, including the lots owned by the various defendants. Plaintiffs initiated this lawsuit challenging the various defendants' right to use the road to access their properties and the extent of that use.

By way of background, in the late 1800s Thomas Shehan owned a 40-acre parcel of property bordering the northwest shore of Oneida Lake. He split the property into 10 lots and deeded an express easement, now known as Island Shore Drive, through each lot to provide access to the main roadway. In 1922, property on the northeast side of the lake was platted into Cady's Point Comfort Subdivision, and in 1933, another parcel on the northeast side of the lake was platted into Island Lake Shores Subdivision. According to plaintiffs, the lots in Cady's Point and Island Lake Shores previously had access to main roads through other unrelated properties.

In 1980, plaintiffs purchased two of the Shehan lots. At that time, the lots in Cady's Point and Island Lake Shores already had become landlocked, and the lot owners were using Island Shore Drive for ingress and egress to M-36. According to plaintiffs, at the time they purchased their property, there were 14 year-round homes using Island Shore Drive, but by 2008, 29 year-round homes relied on the road for ingress and egress to M-36.

In December 2004, plaintiffs sent defendants a memo advising them that they had obtained only a limited easement by prescription over plaintiffs' property and only for ingress or egress. *Id*. As traffic increased, plaintiffs attempted to control access to the portion of Island Shore Drive crossing their property, including digging ruts into the roadway that crosses their property. Defendants allegedly retaliated with numerous acts of harassment against plaintiffs.

In February 2012, plaintiffs initiated this action against defendants alleging nuisance, trespass, unreasonable interference with plaintiffs' enjoyment of their land, malicious destruction of property, and intentional infliction of emotional distress (IIED). Plaintiffs then moved for declaratory and injunctive relief, asking the court to prevent defendants, their families, and their invitees from engaging in acts of trespass, nuisance, and malicious destruction of property. The trial court denied plaintiffs' motion for declaratory and injunctive relief, and consolidated plaintiffs' action with a quiet title action initiated by property owners within Cady's Point, Island Lake Shores, and along Island Shore Drive.

Several of the defendant property owners moved for summary disposition on the basis that they had established an easement by prescription and by necessity, and that plaintiffs had not established a claim of nuisance nor a claim of intentional infliction of emotional distress. The trial court found that defendants had established a prescriptive easement and an easement by necessity in the portion of the Island Shore Drive that crosses plaintiffs' property, finding that defendants or their predecessors in interest had used Island Shore Drive continuously from 1980 to 2004. The trial court granted defendants' motions for summary disposition regarding plaintiffs' nuisance, trespass, malicious destruction of property, and IIED claims pursuant to MCR 2.116(C)(10), and

denied plaintiffs' renewed motion for declaratory and injunctive relief. The trial court denied plaintiffs' motion for reconsideration.

Plaintiffs appealed. This Court affirmed in part, reversed in part, and vacated in part the trial court's order, and remanded the case to the trial court for further proceedings. *Lamkin v Hartmeier*, unpublished per curiam opinion of the Court of Appeals, issued September 1, 2016 (Docket No. 326986), p 6-7.] This Court held that:

> We therefore affirm, to a limited extent, the trial court's finding that defendants enjoy a prescriptive easement for ingress and egress between M-36 and their homes over Island Shore Drive. The limitation, as noted, is that the easement is only for ingress and egress; it does not include any right to make use of the easement for recreational purposes. The right of ingress and egress does, consistent with other reasonable concessions made by plaintiffs in their depositions, extend to reasonable invitees, such as delivery vehicles, emergency vehicles, utility workers or contractors, or guests. We note that some defendants did provide direct evidence that they personally, or they and their direct predecessors, had used Island Shore Drive for at least the requisite period, but we are not persuaded that the evidence demonstrates a greater use than for ingress and egress.

> Plaintiffs contend that the trial court should not have dismissed their claims for trespass and for nuisance. On the basis of our holdings above, we agree in part. Clearly, defendants did not commit a trespass by using Island Shore Drive for ingress and egress. However, plaintiffs' trespass claim also included allegations that defendants damaged their property outside the easement, and furthermore, as noted, using Island Shore Drive for recreational purposes exceeds its scope. "Activities by the owner of the dominant estate that go beyond the reasonable exercise of the use granted by the easement may constitute a trespass to the owner of the servient estate." *Schadewald v Brule*, 225 Mich App 26, 40; 570 NW2d 788 (1997). Conversely, a dominant estate holder "has the privilege to do such acts as are necessary to make effective the enjoyment of the easement, unless the burden upon the servient tenement is thereby unreasonably increased." *Mumrow v Riddle*, 67 Mich App 693, 699; 242 NW2d 489 (1976). The touchstone being reasonableness under the circumstances and what amounts to a balancing test, *id*. at 699-700, and in light of the present procedural posture of this matter, we are not in a position to evaluate whether defendants have overburdened the easement.

> Likewise regarding the nuisance claim, it is difficult for us to understand how defendants can have created a nuisance by failing to maintain any part of Island Shore Drive, in light of plaintiffs' failure to articulate how they are obligated to do so and concession that they themselves damaged the road surface and objected to collective maintenance of the roadway through use of a special assessment district. Nevertheless, they also alleged that defendants engaged in acts of gratuitous speeding, honking horns, spinning tires, and otherwise generating disturbances. Noise can constitute a nuisance, depending on its character, volume, time, duration, and other circumstances. *Smith v Western Wayne Co Conservation Ass'n*, 380

-3-

Mich 526, 536; 158 NW2d 463 (1968). Again, we are not in a position to evaluate most of the real merits of this claim.

> We find that the trial court clearly was correct in dismissing some of plaintiff's trespass and nuisance claims, but we conclude that the trial court went too far in dismissing them in their entirety. We lack a sufficient record to determine the merits of the remainder of plaintiffs' claims. Therefore, consistent with the above paragraph, we partially vacate the trial court's dismissal of plaintiffs' trespass and nuisance claims, and we remand those for further proceedings consistent with this opinion. Consequently, it is unnecessary for us to address plaintiffs' motion for reconsideration. While this result may not be consistent with the most restrictive, narrow, and harsh reading of applicable precedent theoretically possible, we find it dictated by a fair reading thereof and supplemented by the non-binding but certainly not irrelevant equities of the situation when viewed as a whole. [*Lamkin*, unpub op at 8.]

The parties sought leave to appeal to our Supreme Court, which held the applications in abeyance pending its resolution of *Marlette Auto Wash*. *Lamkin v Hartmeier*, 893 NW2d 612 (2017). After issuing its decision in *Marlette*, the Supreme Court, in lieu of granting leave in this case, vacated in part this Court's judgment and remanded the case to this Court as follows, in pertinent part:

> We do not disturb the remand to Livingston Circuit Court on the issue of nuisance. We REMAND this case to the Court of Appeals for reconsideration as to whether each defendant established a prescriptive easement in light of *Marlette Auto Wash, LLC v Van Dyke SC Properties, LLC*, 501 Mich 192 (2018), and for reconsideration of the scope of each easement based on the manner of use by which the easement was acquired and manner of the previous enjoyment, see *Heydon v MediaOne*, 275 Mich App 267, 271 (2007). [*Lamkin v Hartmeier*, 503 Mich 891 (2018).]

On remand, this Court affirmed in part, reversed in part, and vacated in part the trial court's previous decision and remanded to the trial court a second time for further proceedings, while retaining jurisdiction. *Lamkin v Hartmeier (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued September 17, 2019 (Docket No. 326986), p 2. Applying *Marlette*, this Court on remand held:

> The trial court's dismissal of plaintiffs' nuisance claims remains vacated in part and remanded to the trial court for further proceedings consistent with the portion of our prior majority opinion discussing nuisance. The trial court's dismissal of plaintiffs' trespass claims also remains vacated in part to the extent plaintiffs' claim is based on defendants unreasonably overburdening the easement or straying from its boundaries. The trial court's finding that defendants had established an easement by necessity remains reversed.

> We hold that the Laudenslager, Beaudoin, and Christie defendants have established a valid easement by prescription as described and limited more fully above. The trial court therefore need not reconsider the nature and extent of their

easements. We hold that Kraska has established an identical easement by prescription at least to the extent of seasonal use. We further hold that no defendants could establish an easement with a greater scope than the easements held by the Laudenslager, Beaudoin, and Christie defendants. However, we are concerned by the equities of the situation and conclude that the parties should be afforded a full and fair opportunity to present and respond to evidence and argument with the benefit of *Marlette*, *Heydon*, and our present opinion. Therefore, on remand, the remaining defendants other than the Laudenslager, Beaudoin, and Christie defendants shall have the opportunity to present further evidence and argument in support of the existence and scope of any prescriptive easements they might have. Plaintiffs shall likewise have the opportunity to respond. [*Lamkin (On Remand)*, unpub op at 7-8.]

This Court thus, with respect to the Hartmeier, McComb, Engram, and Kraska defendants, remanded the matter to the trial court a second time for determination, directing the trial court to afford the parties opportunity to be heard on the issue on remand. *Lamkin (On Remand)*, unpub op at 7-8. On second remand, the trial court conducted an evidentiary hearing, after which the trial court held that "[o]n remand, defendants Hartmeier, McComb, Engram, and Kraska have shown clear, cogent, and unrebutted proof of possession of Island Shore Drive that is actual, continuous, open notorious, hostile, and uninterrupted for the relevant statutory period as required under *Marlette Auto Wash, LLC*." This case now returns to this Court as a result of retained jurisdiction.

## II. DISCUSSION

A party claiming adverse possession must establish "clear and cogent proof of possession that is actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for the relevant statutory period." *Marlette Auto Wash*, 501 Mich at 202. A use is hostile when the use is "inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder." *Houston v Mint Group, LLC*, 335 Mich App 545, 559; 968 NW2d 9 (2021) (quotation marks and citation omitted). When the elements of adverse possession have been met, "the law presumes that the true owner, by his acquiescence, has granted the land, or an interest to the land, so held adversely." *Marlette Auto Wash*, 501 Mich at 202 (quotation marks and citation omitted). An easement by prescription requires a party to demonstrate the same elements as those for adverse possession, except for exclusivity. *Id*. A prescriptive easement results from "no more than an unopposed, continuous trespass for 15 years." *McDonald v Sargent*, 308 Mich 341, 344-345; 13 NW2d 843 (1944).

Under MCL 600.5801, the relevant period of limitation for adverse possession and prescriptive easement is 15 years. The 15-year period is counted from the time the original owner is disseized of the land, MCL 600.5829(1), which occurs "when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership." *Houston*, 335 Mich App at 559. Successive periods of adverse possession (and, by analogy, prescriptive easement), by different parties can be tacked to satisfy the 15-year period when there was privity of estate between the parties. *Id*. at 560. Privity of estate is established only when (1) the deed includes a description of the disputed property, or (2) when there is an actual transfer or conveyance of the disputed property by parol statements made at the time of conveyance, or (3) "a parol transfer may occur if a property owner is 'well-acquainted' with the previous property

-5-

owner and had visited and used the disputed property for many years before acquiring title." *Marlette Auto Wash, LLC*, 501 Mich at 203. In that scenario, "the parties must have understood that an easement was appurtenant to the land." *Id*. (quotation marks and citation omitted).

A claimant is not required to establish privity of estate, however, if a predecessor in interest acquired the easement by adverse use for 15 years. "[A] claimant seeking to prove the existence of a prescriptive easement may establish that the requisite elements were met by the claimant's predecessor in interest. When a prescriptive easement vests with the claimant's predecessors in interest, the easement is appurtenant and transfers to subsequent owners in the property's chain of title without the need for the subsequent owner to establish privity of estate." *Id*. at 203-204.

In this case, this Court on remand discussed the proper application of *Marlette*:

On remand, defendants misconstrue *Marlette* as obviating the need for privity altogether. *Marlette* held nothing of the sort. Rather, *Marlette* explained that privity is no longer required for an easement to run with the land after the easement has vested. It so happened that in *Marlette*, the requisite fifteen-year period for adverse possession was satisfied by a single party. However, *Marlette* expressly acknowledged that "[i]f 'no single period' of adverse use amounts to the fifteen-year statutory period, a party claiming a prescriptive interest may tack the possessory periods of their predecessors in interest 'to aggregate the 15-year period of prescription' if the claimant can show privity of estate." *Marlette*, 501 Mich at 203. The unambiguous significance of *Marlette* is that a prescriptive easement vests immediately and automatically upon satisfaction of the statutory requirements by either a single property owner, or a succession of property owners in privity with each other. Then, and only then, is any need for privity obviated. This is not a novel holding: a prescriptive easement that has already vested has always been deemed to run with the land, even where parcels are later subdivided. See *von Meding v Strahl*, 319 Mich 598, 611; 30 NW2d 363 (1948).

Therefore, we conclude that our Supreme Court's order for us to consider "whether each defendant established a prescriptive easement in light of *Marlette*" implicitly instructs that any individual defendant may satisfy the statutory requirements in one of three ways: (1) personally; (2) by tacking the defendant's own use to the use of a predecessor or predecessors in privity; or (3) by showing that any prior owner of the property, or any chain of owners in privity with each other, had satisfied the statutory requirements at any time in the past. [*Lamkin (On Remand)*, unpub op at 4-5 (footnote omitted).]

After an evidentiary hearing on second remand, the trial court held that the Hartmeier, McComb, Engram, and Kraska defendants had established by clear and cogent evidence that they had acquired a prescriptive easement across plaintiffs' parcels for all means of ingress and egress using Island Shore Drive. The trial court summarized the evidence as follows:

Eugene and Cynthia Hartmeier purchased their property in the Cady Point Comfort Subdivision, located at 5208 Schlenker Drive, on March 22, 1999. Sharon Blan and her late husband, Gomer Blan, purchased the property from Louise M.

Cahill on June 24, 1987. Sharon Blan lived at that home between 1987 and 1995. Kimberly Clemons is the daughter of Sharon Blan. Beginning in 1993, Kristine Clemmons [sic], her husband and their three children lived at the home with Sharon Blan. In 1995, Sharon Blan moved out of the home, while Kristine Clemons, her husband, and her three children continued to live there until 1999. John Hammons is the son of Kristine Clemons. John Hammons lived at the home between 1993 and 1999.

Sharon Blan, Kimberly Clemons, Josh Hammons, and/or Kristine Clemons used Island Shore Drive for a period of 11 years and 9 months. For 13 years and 6 months, when this action was initiated, the Hartmeier defendants used Island Shore Drive. When Kimberly Clemons sold 5208 Schlenker Drive in 1999, it was her express intent to include in the sale of the property the right to use Island Shore Drive for all purposes that a public road could be used.

Dennis and Gloria McComb purchased their property in the Cady Point Comfort Subdivision, located at 5182 Island Shore Drive, on December 18, 2003. Phyllis and Conrad Podulka purchased the property from the Chismans on June 5, 1992. The Podulkas lived in their home until Mr. Podulka passed away on April 12, 2002. Mrs. Podulka continued living in the home until it was sold to the McCombs.

The Podulkas' use of Island Shore Drive lasted a period of 11 years and 6 months. For 8 years and 9 months, when this action was initiated, the McComb defendants used Island Shore Drive. When Phyllis Podulka sold 5182 Island Shore Drive in 2003, it was her express intent to include in the sale of the property the right to use Island Shore Drive for all purposes that a public road could be used. When the McComb defendants purchased 5182 Island Shore Drive in 2003, they believed that they had acquired the right to use Island Shore Drive for all purposes that a public road could be used.

Daniel and [D'Anne] Engram purchased their property in the Cady Point Comfort Subdivision, located at 5256 Schlenker Drive, on June 3, 1999. Sharon and Charles McAlister purchased the property from grantors Schlenker and Hancock on February 1, 1971. Their home was constructed in 1974 and they lived there [with their] daughter until the home was sold to Robert and Doris Missel in 1994. The Missels lived in the home until the[y] sold the property to the Engrams.

The McAlisters' use of Island Shore Drive lasted a period of 23 years and 7 months. The Missels' use of Island Shore Drive lasted a period of 4 years and 9 months. For 13 years and 4 months, when this action was initiated, the Engram defendants used Island Shore Drive. When the McAlisters sold 5256 Schlenker Drive in 1994, it was their express intent to include in the sale of the property the right to use Island Shore Drive for all purposes that a public road could be used. When the Missels purchased their home from the McAlisters [they] believed they had acquired the right to use Island Shore Drive for all purposes that a public road could be used. It was then their express intent to include the use of Island Shore

Drive for all purposes that a public road could be used in their sale of the property to the Engram defendants in 1999. When the Engram defendants purchased 5256 Schlenker Drive, they believed they had acquired the right to use Island Shore Drive for all purposes that a public road could be used.

Elmer and Pat Kraska purchased their property in the Cady Point Comfort Subdivision, located at 5900 Island Shore Drive, on April 16, 1964. They, with their two daughters, Kathleen and Kimberly, initially used the property as a summer cottage until 1976. Then, from 1976, Mr. and Mrs. Kraska began living in the home permanently and year-round until 1979, when their daughter Kathleen (now Kathleen Kalin), began living at the home with her husband and their three daughters. Finally, Kimberly obtained the property from her father in 1990, and has been living in the home ever since. During the entire 48 years and 5 months, that the Kraska family has owned their property, defendants have used Island Shore Drive. The home at 5090 Island Shore Drive had been used as a year-round permanent home for more than 36 years when this action was initiated. When Elmer Kraska conveyed 5090 Island Shore Drive to his daughter, defendant Kraska, it was his express intent to include in the sale of the property the right to use Island Shore Drive for all purposes that a public road could be used. When defendant Kraska obtained her home from her father, she believed she had acquired the right to use Island Shore Drive for all purposes that a public road could be used.

From the moment the parcels discussed herein were improved, the owners of such parcels, including defendants herein discussed, used Island Shore Drive continuously as a means of ingress and egress. None of the owners of the parcels discussed herein, including any defendants, asked for permission to use Island Shore Drive, nor did Plaintiffs give them such permission. This use of means for ingress and egress included incidental use by invitees, such as guests, delivery vehicles, maintenance and utility vehicles, emergency vehicles, trash service, and mail delivery. This use further included recreational use, such as walking and bike riding. These uses continued until the instant litigation was commenced and continues to this day.

The trial court's factual findings are supported by the record, specifically by the transcript of the evidentiary hearing held by the trial court on second remand.

## A. THE HARTMEIERS

Cindi Hartmeier testified that she lives at 5208 Schlenker, which she and her husband purchased in March of 1999 from Sharon Blan, Christine Clemons, and Kim Clemons. At the time plaintiffs filed their complaint in February 2012, the Hartmeiers had owned their home for 12 years, 11 months. Cindi testified that she used Island Shore Drive to access the house since buying it, that she considered the road to be a public road, and never asked permission to use it. Cindi testified that she and her family used the road approximately twice a day since purchasing the house in 1999, continuing that use even after plaintiffs' 2004 memo, and that their guests and service vehicles also used the road. Eugene Hartmeier testified similarly to Cindi.

-8-

In her deposition testimony, Kim Clemons testified that she is the daughter of Sharon Blans, who built the house at 5208 Schlenker Drive in 1987 and moved into the house at that time, and continued to the live in the home until 1999 when Clemons, her sister, and Sharon Blans sold the home to the Hartmeiers. Clemons testified that she, her mother, and her sister were all owners on the deed for the home and from 1987 to 1999, they used Island Shore Drive regularly to access the home throughout those approximately 12 years, including driving and walking, and their guests also used the road. She testified that she believed the road to be a public road and was never told that it was not a public road. When they sold the home to the Hartmeiers, Clemons and her family believed they had the right to use the road and intended to include in the sale the right to use the road for all purposes that a public road can be used.

John Hammonds testified by deposition that he lived at 5208 Schlenker Drive from 1993 to 1999, that he was a child at that time and the home was owned by his grandmother, Sharon Blans, and that he lived there with his parents and siblings. He testified that during that time they used Island Shore Drive, they did not ask anyone's permission to use the road, and that during that time no one attempted to limit their use of the road. He believed that the road was a public road. He testified that they used the road for driving, walking, biking, and operating his dirt bike.

To summarize, the Hartmeiers owned the property and used Island Shore Drive beginning in 1999. The Hartmeiers' predecessors testified that they lived on the property and used Island Shore Drive from 1987 until 1999. The testimony supports a finding that the Hartmeiers and their predecessors used the road for ingress and egress, by vehicular travel, for walking, biking, and recreational use, and for the use of guests and service vehicles to the home.

To tack, the Hartmeiers were required to establish privity with their predecessors in interest. As discussed, to establish privity in the context of a prescriptive easement, the party asserting the easement must demonstrate either that (1) the deed includes a description of the disputed property, or (2) when there is an actual transfer or conveyance of the disputed property by parol statements made at the time of conveyance, or that (3) the property owner "is 'well-acquainted' with the previous property owner and had visited and used the disputed property for many years before acquiring title." *Marlette Auto Wash, LLC*, 501 Mich at 203. In the third scenario, "the parties must have understood that an easement was appurtenant to the land." *Id*. (quotation marks and citation omitted).

With regard to establishing privity, this Court in this case instructed the trial court:

> We are not persuaded that the three methods for showing privity outlined by our Supreme Court are strictly exclusive. In *von Meding*, our Supreme Court held that under the circumstances of the case, it was "inescapable" that a contemporaneous parol transfer had "undoubtedly" been the parties' intentions. *von Meding*, 319 Mich at 614-615. The "clear and cogent evidence" standard for establishing a prescriptive easement "cannot be made out by inference." *Donohue v Vosper*, 189 Mich 78, 90; 155 NW 407 (1915). Therefore, a party cannot base an adverse use claim on use made by a neighbor. However, it is clear from *von Meding* that some degree of inference can be permissible to show privity. Thus, some other analogous circumstance might also give rise to an "inescapable" conclusion that the seller and purchaser "undoubtedly intended an easement to be included in the

conveyance, given the absence of direct proof. The lack of any other way to access the property is an insufficient circumstance by itself to establish such a mandatory inference. However, a historic lack of alternative access is not irrelevant and can certainly be considered in conjunction with additional information or evidence. [*Lamkin (On Remand)*, unpub op at 6 (footnote omitted).]

We conclude that the Hartmeiers established privity under the second scenario. Although they did not produce evidence of a specific parol statement, they established that they understood that an easement was appurtenant to the land and Kim Clemons, the seller, testified that she intended to convey to them the right to use the road. The "not irrelevant" historic lack of an alternative access to the property and the testimony of the Hartmeiers and their predecessor in interest gives rise to an "inescapable" conclusion that both parties to the transaction "undoubtedly" intended an easement to be included in the conveyance.

## B. THE MCCOMBS

Phyllis (Podulka) Davenport testified by deposition that she purchased the home at 5182 Island Shore Drive in 1992 from Donald and Joan Chisman, and lived there until December 19, 2003. She testified that she and her husband used Island Shore Drive daily during that time, crossing plaintiffs' property on the road. Their visitors also used the road, as did any contractors. Davenport and her husband used the road by driving their vehicles and also walked on the road. She testified they were never told not to use the road, and never asked permission to use the road. During this time, she and her husband paid a special assessment tax for the maintenance of the road. When she sold the home to the McCombs in 2003, she advised them of the special assessment tax, and the deed advised the McCombs that the property abutted a private street, though it did not identify the street. She further testified that by deeding the property to the McCombs, she intended to transfer to them her right to use the road.

Gloria McComb testified that she lives at 5182 Island Shore Drive, having purchased the home from Phyllis (Podulka) Davenport in 2003. She testified that at the time of purchase, Davenport told her and her husband that the property was subject to a special assessment district tax for the purpose of maintaining Island Shore Drive, and that they did, in fact, pay the special assessment tax after purchasing the home. She further testified that she had visited the home several times before she purchased it and understood that she would be able to use the road in the same manner that the previous owner did; she was never told that she needed permission to use the road, and never asked for permission. She further testified that the deed to the home referenced the private road. She testified that Island Shore Drive was the only access road to the home during the time she lived there and that she used the road consistently and frequently, driving on it with her car and golf cart, pulling a boat trailer with a vehicle, and walking; the road was also used by visitors, repair people and contractors, delivery trucks, and emergency vehicles. Gloria McComb's husband, Dennis McComb, testified consistently with Gloria.

We conclude that the McCombs established privity. They established that they understood that use of the road was being conveyed when they purchased the home. The seller, Phyllis (Podulka) Davenport testified that she intended to convey to the McCombs her right to use the road. The deed references the abutting private street and she informed them of the special assessment tax for maintenance of the road at the time of sale. The "not irrelevant" historic lack

-10-

of an alternative access to the property and the testimony of the McCombs and their predecessor in interest gives rise to an "inescapable" conclusion that both parties to the transaction "undoubtedly" intended an easement to be included in the conveyance.

## C.  THE ENGRAMS

Daniel Engram testified that he and his wife, D'Anne Engram, purchased 5256 Schlenker Drive from Robert and Doris Missel on June 3, 1999, and the Missels in turn had purchased it from Sharon McAlister in 1994.  At the time the Engrams purchased the home, the only access to the home was provided by Island Shore Drive.  Before buying the property, Daniel drove by it approximately 10 times and saw realtors and other vehicles using Island Shore Drive to access the subdivision where the house was located.  He was never told that he needed permission to use the road.

After purchasing the home in 1999, he used the road daily to drive to work until he retired in 2020.  He testified that his wife also used the road to go to work from approximately 2004 to 2021.  They also sometimes drove their motor home on Island Shore Drive, sometimes drove their lawn tractor and quad runner on the road, and also walked and rode bikes on the road.  He testified that service contractors and emergency vehicles also used the road to access his house.  He testified that after receiving a letter from plaintiffs' attorney in December 2004, he understood that he already had a prescriptive easement to use the road for vehicle travel and did not require permission from anyone to use the road.  He further testified that the property was subject to a special assessment district from 1999 to 2009, for which he paid taxes.  He further testified that when he bought the house, he understood that the only access to the property was via Island Shore Drive, crossing plaintiffs' property.  D'Anne Engram testified consistently with her husband.

Sharon McAlister testified by deposition that she owned the property at 5256 Schlenker Drive from 1971 until 1994.  She and her husband built a home on the property and moved into the home in 1974.  She testified that she and her husband used Island Shore Drive daily to access their property; the road was also used by service vehicles and emergency vehicles to access her property, and her family also used the road to walk, ride bikes, and snowmobile.  She testified that during that time no one, including plaintiffs, told her that she needed their permission to use the road, although she socialized with plaintiffs.  She further testified that her husband often assisted in maintaining the road by grading it.  In 1994, the McAlisters sold 5256 Schlenker Drive to Bob Missel.  Thus, Sharon McAlister used the road for 20 years before conveying the property to the Missels.

Because the Engrams' predecessor in interest, Sharon McAlister, acquired a prescriptive easement that was then appurtenant to the property, the Engrams established a prescriptive easement without regard to whether there was privity.  *Marlette*, 501 Mich at 203-204.

## D.  THE KRASKAS

Kimberly Kraska testified that she is the sister of Kathleen Kalin.  She lives at 5090 Island Shore Drive; although she now lives alone, the home started as a family cottage purchased by Kimberly and Kathleen's parents, Elmer and Pat Kraska, in April 1964.  The family used the cottage for seasonal use from 1964 until 1976, but by 1979, Elmer and Pat made the cottage their

full-time home. Kimberly testified that her sister Kathleen lived in the home with her three children full time from 1979 to 1990. Kimberly testified that in 1990 she acquired the property from her father and began living at the home full time; she continued to live at the home full-time at the time of the evidentiary hearing. She testified that during the years that her family lived in the home, they used Island Shore Drive daily to access their property. The family drove their cars on the road and also rode bikes and walked on the road. Delivery trucks, emergency vehicles, and family visitors also used the road to access the family home. When she acquired the property from her father, she understood that she had the right as the property owner to use the road to access the home, and that she would not have purchased the property without the right to use the road. She testified that she never asked permission to use the road and was never told that she needed permission to use the road.

The Kraskas established a prescriptive easement. At the time plaintiffs filed the lawsuit in 2012, Kimberly Kraska had owned and lived in the home continuously for 22 years. Although she has no need to demonstrate tacking, the evidence also supports such a finding by establishing privity under the third exception; Kimberly was part of the same family as the seller and had visited and used the property for years before Kimberly obtained the property from her father.

To summarize, all four defendants established that they obtained a prescriptive easement to traverse the portion of Island Shore Drive that crosses plaintiffs' property. The Hartmeiers and the McCombs established a prescriptive easement by demonstrating privity that enabled them to tack the periods of adverse possession of their predecessors in interest. The Engrams have a prescriptive easement by virtue of the McAlisters' prescriptive easement without having to demonstrate privity; it was appurtenant to the land when the Engrams purchased the property. The Kraskas established a prescriptive easement without the need to tack. For 15 years or more, each defendant and/or their predecessor in interest used the road daily for vehicular travel for ingress and egress, for visitors, deliveries, service providers, and emergency services vehicles. Each defendant also used the road for walking, and for other means of traveling to and from their respective properties, such as biking, towing boats, and moving recreational vehicles, such as an RV or a quad runner. Defendants thereby demonstrated that each had acquired an easement by prescription to use the portion of Island Shore Drive that crosses plaintiffs' property for purposes of ingress and egress to their own properties, whether by vehicle, walking, or some other means of transit, and also for purposes of permitting visitors, service vehicles, deliveries, and emergency vehicles.

Affirmed.

/s/ Jane E. Markey
/s/ Kirsten Frank Kelly
/s/ Michael F. Gadola